[Civ. No. 5895. First Appellate District, Division Two.—April 19, 1928.]

JAMES J. RYAN, Appellant, v. SYLVESTER ANDRIANO et al., Respondents.

John J. Taaffe and Joseph L. Taaffe for Appellant.

John J. O'Toole, City Attorney, and Thomas P. Slevin, Assistant City Attorney, for Respondents.

THE COURT.—Plaintiff appeals from the judgment of the superior court denying a writ of *mandamus* by which appellant sought to compel the respondent Board of Supervisors to grant a permit to conduct and maintain a stable for horses at No. 817 Thirty-sixth Avenue, San Francisco. This stable had been in continuous operation for a period of twenty years prior to the date of the trial, April 5, 1926. Appellant, as a tenant, maintained the stable from 1914 to 1918. In 1918 appellant intended and desired to purchase the stable from the then owner, Mrs. Marie Gommet. As his purchase was contingent upon obtaining a permit, application for the same was made in the name of Mrs. Gommet. The respondents required appellant to make extensive sanitary improvements within certain time limits. These improvements were made and the permit issued. Appellant purchased the stable and continued to operate it. In 1922 appellant applied for permission to make additional improvements and it then being noticed that the permit was not in his own name he was instructed first to procure such a

permit. Application being made for this permit, protests were received by the respondent Board of Supervisors against the granting of the same. The matter was deferred from time to time until December, 1924, when the application for a permit was denied. During this two-year pendency of the application the respondents did not specify objectionable features to the stable and did not fix a time within which appellant should be required to remove such objections. The respondents' denial of the application for a permit seems to be based upon the conclusion that the said stable is not in the interests of the welfare of the inhabitants in the vicinity of its location.

The stable ordinance No. 2639, new series, approved February 26, 1914, is substantially as follows:

Section 1. Prohibits the maintenance of a stable without a permit.

Section 2. Provides that those conducting stables at the time of the passage of the ordinance must obtain a permit within not to exceed six months.

''Section 3. No permit shall be granted for a stable hereafter to be constructed and maintained, or for the future maintenance as a stable of a building not used as such, except on the report of the Board of Health, or other satisfactory evidence, that the proposed place of construction or maintenance of such stable is unobjectionable from the point of view of sanitation and of the health and physical welfare of the inhabitants of the immediate neighborhood of its location.

''Section 4. The Board of Supervisors shall not refuse a permit for the maintenance of a stable in a building now constructed and maintained as a stable except upon satisfactory evidence that such stable is conducted in an insanitary manner and the failure to remove the objection to the manner of its maintenance within a time to be prescribed by the Board of Supervisors.

''Section 5. A permit granted hereunder is subject to revocation by the Board of Supervisors.

''Section 6. No permit shall be refused or revoked by the Board of Supervisors except after a full hearing, and then only in the exercise of a sound and reasonable discretion by said Board.''

Appellant's contention is that whatever may be the rule to be followed by the board in granting or refusing permits

for new stables as defined in section 3 above, nevertheless, in the case of an application for a permit for a stable in a building which was constructed and maintained as a stable at the time of the passage of the ordinance, the board has no power to refuse such permit except where there exist two things which are specified in section 4 of the ordinance, to wit: 1. That the stable is conducted in an insanitary manner; and 2. That the applicant shall fail to remove such objection in a time to be prescribed by a board of supervisors.

The terms of the ordinance uphold the contention of appellant. Section 3 provides for new stables and section 4 provides for stables in buildings theretofore used as stables. The method of treating the application for permits is distinctly different in each class. Section 6 must be construed with section 4. Both must be given effect and therefore the discretion mentioned in section 6 is a discretion to be exercised under the terms and procedure of section 4, in case of a pre-existing stable, and the discretion mentioned in section 3 is confined to new stables.

The provisions of the city charter, article II, chapter 2, section 1, giving the board power to ordain, make and enforce all necessary local police, sanitary and other laws and regulations, cannot be held to authorize the board to exercise all the powers which may be legitimately exercised under the police power without appropriate legislation predetermining the rules of conduct by which such police power will be exercised. To hold otherwise would do away with the necessity of general legislation and would not be due process of law. This charter provision does not permit the board to specially legislate upon each stable separately.

At the trial it was stipulated between counsel that the block in which this stable is situated is zoned under the terms of the city zoning ordinance as for second residential purposes. The zoning ordinance was not in the record and upon suggestion of this court the parties stipulated that said ordinance might become a part of this record and considered upon the determination of this appeal. The said ordinance has been filed with the record in this case. The parties were also given an opportunity to file any additional points and authorities made pertinent by the consideration of this ordinance, but neither one had done so.

It is provided in section 4 of said zoning ordinance that in a second residential district no building or premises

shall be used for any purpose other than for certain specified purposes which are enumerated in the ordinance, but among which stables are not included. Section 9 of the zoning ordinance provides:

"Any nonconforming use existing at the time of the passage of this ordinance may be continued and any existing building designed, arranged, intended or devoted to a nonconforming use may be reconstructed or structurally altered and the nonconforming use therein changed subject to the following regulations": etc.

In section 21 it is provided, among other things, as follows: "It is not intended by this ordinance to repeal, abrogate, annul or in any way to impair or interfere with any existing provision of law or ordinance or any rules, regulations or permits previously adopted or issued or which shall be adopted or issued pursuant to the law relating to the use of buildings or premises."

By virtue of these provisions we find that the zoning ordinance does not adversely affect the petitioner's application for a permit because the stable was operating prior to the adoption of both ordinances.

We conclude therefore that petitioner's application for a stable permit could not be denied without opportunity being first given him to remove objections to be specified by the board within a time to be specified by the board as described in section 4 of the stable ordinance.

For these reasons the judgment appealed from is reversed.

A petition by respondents to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 18, 1928.